IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

HONEYWELL INTERNATIONAL, INC.,   )
                                                 )
          Plaintiff,                 )
                                                 )
v.                                     )    Civil Action No. 3:10CV841–HEH
                                                 )
INTERNATIONAL CHEMICAL         )
WORKERS UNION LOCAL 591-C,    )
                                                 )
         Defendant.               )

## <u>MEMORANDUM OPINION</u>
**(Cross Motions for Summary Judgment)**

This is a labor dispute involving the enforceability of an arbitrator's award which

included additional compensation to employees for newly-assigned duties. The

underlying action, filed by Honeywell International, Inc. ("Honeywell") under Section

301 of the Labor Management and Relations Act, 29 U.S.C. § 185(a), seeks to bar

enforcement of the arbitrator's award. Conversely, the International Chemical Workers

Union Local 591-C ("Union"), has filed a cross claim for enforcement. The case is

presently before the Court on cross motions for summary judgment. Both parties have

submitted memoranda of law supporting their respective positions. The Court heard oral

argument on June 7, 2011. None of the material facts are in dispute.

The grievance submitted for arbitration evolved from Honeywell's decision to

transfer laboratory testing responsibilities from laboratory technicians in the Resins and

Chemicals Group to chemical operators in the Specialty Chemical Group at Honeywell's

Hopewell, Virginia facility. During the relevant time period in 2007, Honeywell and the

Union were parties to a collective bargaining agreement governing the terms and conditions of employment of the individuals affected by this reassignment of duties.

In response to Honeywell's decision, the Union filed a grievance seeking the restoration of testing responsibilities to the laboratory technicians with the Resins and Chemicals Group. Toward that end, the Union pursued restoration of these duties during negotiations for a new collective bargaining agreement in March 2008 ("the 2008 CBA"). The proposal was rejected by Honeywell and consequently was not included in the current collective bargaining agreement. The Union then sought an increase in compensation for chemical operators for their enhanced and more complex responsibilities. This likewise proved to be unsuccessful.

Following formal denial of the Union's grievance in February 2009, both parties, pursuant to the 2008 CBA, agreed to engage in arbitration. The parties jointly stipulated to two issues for arbitral resolution:

> (1) Whether the Company violated the collective bargaining agreement by assigning to Specialty Chemical Operators certain lab work previously performed by [Laboratory Technicians] in the main lab and if so, what is the appropriate remedy?
>
> (2) Whether the company violated the collective bargaining agreement by failing to increase the wages of Specialty Chemical Operators after assigning certain lab work to those operators and, if so, what is the appropriate remedy?

(Pl.'s Mem. Supp. Mot. Summ. J. 4, ECF No. 16.)

Louis Dene was designated as the arbitrator and a hearing was held on April 15, 2010. The arbitrator issued his opinion on August 19, 2010. With respect to the first issue submitted, the arbitrator concluded that the reassignment of duties did not exceed

Honeywell's contractual rights and therefore was not in violation of the 2008 CBA.

Neither Honeywell nor the Union contests this finding.

The arbitrator's decision on the second question presented is the core issue in this litigation. The arbitrator sustained this grievance and concluded that Honeywell's failure to provide the chemical operators with a wage increase violated the 2008 CBA. He further determined that an appropriate remedy was a wage increase of $1.00 per hour effective on the first day of the payroll after receipt of the arbitrator's decision. The arbitrator's decision on the second issue was based largely on his finding that there were no job classifications in existence that contained the combination of duties reassigned to the chemical operators.

The arbitrator's conclusion on the second stipulated grievance appeared to turn in large part on his construction of Article X, Section 4 of the 2008 CBA. This section entitled "Grievances" reads in pertinent part: "[t]he decision of the Board of Arbitration shall be final and binding upon all parties, except that the Board of Arbitration shall have no power to (1) modify, add to, subtract from, amend or in any way change *existing* wage schedules or wages for specific job classifications . . . ."[1] (2008 CBA, J.A., Ex. 5 at 276)

---

[1] Although not specifically referenced in the arbitration award, closely allied with Article X, Section 4 is Article XII, Section 6 "Wages," which reads:

> [w]hen, as a result of the installation of new equipment or machinery, a new job is created or there is a material change in the duties and responsibilities of an existing job, the Company shall notify the appropriate Union representative of such new or changed job. The Company will establish and assign an appropriate wage rate in recognition of the existing wage rate structure. Any disputes as to the appropriateness of the rate of pay for the new or changed job may be resolved under Article X, Grievance Procedure, commencing at Step 3.

(2008 CBA, J.A., Ex. 5 at 285, ECF No. 17-5.)

(emphasis added).

Contending that the award of a specific wage increase by the arbitrator was expressly prohibited by the 2008 CBA and exceeded the scope of the stipulated issues presented, Honeywell argues that the award fails to "draw its essence from the collective bargaining agreement" and is therefore unenforceable. (Pl.'s Mem. Supp. Mot. Summ. J. 1.) The Union counters that Honeywell's position essentially challenges the correctness of the arbitrator's informed decision, which was a plausible interpretation of the pertinent provisions of the 2008 CBA, when coupled with the stipulated issues for resolution.

The authority of a U.S. District Court to review an arbitration award is among the narrowest known to the law. *U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000). As the United States Supreme Court noted in *Major League Baseball Players Ass'n v. Garvey*, "[j]udicial review of a labor-arbitration decision" is not merely limited but "very limited." 532 U.S. 504, 509, 121 S. Ct. 1724, 1728 (2001). An arbitrator's award is entitled to a heightened degree of deference on judicial review. *Upshur Coals Corp. v. United Mine Workers of Am. District 31*, 933 F.2d 225, 228 (4th Cir. 1991).

"The arbitrator may not ignore the plain language of the contract; but the parties having authorized an arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *Id.* at 228–229 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 371 (1987)). "'As long as the arbitrator is even arguably construing or applying the contract' a court may not vacate the arbitrator's judgment." *Upshur Coals*

4

*Corp.*, 933 F.2d at 229 (quoting *Misco*, 484 U.S. at 38, 108 S. Ct. at 371).

"Not only is an arbitrator's fact finding and contract interpretation accorded great deference, but its interpretation of the law is accorded deference as well. . . . An arbitration award is enforceable 'even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion.'" *Upshur Coals Corp.*, 933 F.2d at 229 (internal citations omitted).

Furthermore, "in the absence of any express limitation or reservation included in the grievance, we presume that the parties, who agreed to arbitration, agree that the authority to address everything necessary to resolve the particular grievance is conferred upon the arbitrator." *Yuasa, Inc. v. Int'l Union of Elec., Elec., Salaried, Mach. and Furniture Worker, AFL-CIO, Local 175*, 224 F.3d 316, 321 (4th Cir. 2000).

This Court may vacate an arbitrator's award only if it "violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong." *Champion Int'l Corp. v. United Paperworkers Int'l Union, Local 507*, 168 F.3d 725, 729 (4th Cir. 1999).

Honeywell argues that the fatal flaw in the arbitrator's decisional process was his finding that the accretion of testing duties assigned to the chemical operators remove them from an existing job classification and wage schedule. The arbitrator concluded that "[a]ccording to the Job Classification and Rate Schedule, there was no existing job classification that contained that combination of job duties." (J.A., Ex. 1 at 15, ECF No. 17-1.) According to Honeywell, this gateway finding gave the arbitrator the impression that the prohibition on wage adjustments by the Board of Arbitration, in Article X,

Section 4 of the 2008 CBA did not apply under the specific facts of this case.

Honeywell contends that the resulting wage increase for chemical operators was not a simple misconstruction of the collective bargaining agreement, but a conscious disregard of its restraining provisions. Even if the arbitrator correctly concluded that the increased duties warranted additional compensation, Honeywell maintains that the 2008 CBA limits the arbitrator's authority to simply direct the parties to negotiate the issue. Therefore, in Honeywell's view, the resulting award failed to draw its essence from the agreement.

The Union, on the other hand, maintains that the arbitrator addressed the precise issues presented, namely, whether Honeywell violated the 2008 CBA by failing to increase the chemical operators' wages *and*, if so, what is the *appropriate remedy*. In the Union's view, the arbitrator rationally construed "appropriate remedy" as including a potential wage increase. Otherwise, the questions presented had a ring of redundancy.

The Union stresses that the language employed to frame the issues for arbitral resolution were stipulated by the parties. Honeywell made no apparent effort to cabin the range of available remedies, but instead relied solely on the terms of the 2008 CBA.

The Union further points out that the arbitrator did not disregard Article X, Section 4 as Honeywell suggests. To the contrary, the arbitrator prefaced the findings in his conclusion by reciting the operative provisions of the Section. The arbitrator then explained why this limitation did not apply to the grievance at hand.

> Here the Company made a management decision to implement a cost
> control plan in the Specialty Products Unit. The basic change was to
> transfer duties from the Laboratory Technician job classification to the

> Chemical Operators classification. According to the Job Classification and Rate Schedule there was no existing job classification that contained that combination of job duties. Consequently, the Chemical Operators in the Special Products Unit were trained to perform the Chemical Operators classification that now includes the Laboratory Technician responsibilities.

(J.A., Ex. 1 at 15.)

The Union also notes that the arbitrator's conclusions were founded in significant part on the testimony of Charles R. Welch ("Welch"), a twenty-two year veteran of the Honeywell, Hopewell, Virginia facility. Welch, who testified as a Honeywell witness, recounted his

> comprehensive analysis of the impact of the lab migration to Chemical Operators classification to determine whether the transfer of the duties changed the complexity of the job and warranted a wage adjustment. According to the analysis prepared by Welch there was a slight increase in the complexity of the Chemical Operator job duties and his 'personal opinion' was that a slight degree of complexity warranted an increase [in salary].

(Arb. Decision, J.A., Ex. 1 at 5.)

To further bolster its argument, the Union asserts that the arbitrator's interpretation of the 2008 CBA is supported by Article XII, Section 6 of that document. Section 6 provides for arbitration when there is a dispute as to the appropriateness of the rate of pay of a new or changed job, "[w]hen, as a result of the installation of new machinery, a new job is created or there is a material change in the duties or responsibilities of an existing job . . . ." (2008 CBA, J.A., Ex. 5 at 285.) Although the arbitrator makes no reference to Article XII, Section 6 in the Arbitration Decision, he clearly concluded that the transfer of testing responsibilities entailed the use of new equipment, as well as modification of duties and responsibilities. The arbitrator observed:

7

> There were no job classifications in existence that contained that combination of duties. Therefore, it was determined that a training program would be developed and implemented to train the Chemical Operators to perform the lab testing job requirements. In addition, the Company decided to acquire equipment to simplify the lab testing functions that the Chemical Operators would be required to perform.[2]

(J.A., Ex. 1 at 3.)

In the final analysis, the Union advances the more compelling argument. Net of rhetoric, Honeywell's challenge appears to focus on the arbitrator's alleged misconstruction of Article X, Section 4 of the 2008 CBA. Honeywell contends that the arbitrator essentially disregarded prohibitory language in Section 4 restraining his authority to award wage increases. A close examination of the arbitration decision appears to reveal the contrary.

The relief awarded by the arbitrator was specifically premised on his conclusion that the chemical operator's enhanced and more complex duties placed them in a non-existing wage schedule or job classification. The arbitrator apparently reasoned that this factual finding relieved him of the restriction on wage adjustments articulated in Section 4 of Article X. Even if the logic underlying this construction was faulty and the arbitrator's conclusions legally incorrect, the detailed reasoning of his decision clearly belies the notion that he ignored the plain language of the contract.[3] As the United States Supreme Court noted in *Misco*, "as long as the arbitrator is even arguably construing or

---

[2] The fact that the arbitrator made no specific reference to Article XII, Section 6 of the 2008 CBA is of no moment. There is no requirement that an arbitrator provide any rationale or explanation for an arbitration award. *PPG Indus., Inc. v. Int'l Chem. Workers Union Council*, 587 F.3d 648, 652 (4th Cir. 2009).

[3] This Court has no warrant to determine the correctness of the arbitrator's award and makes no attempt to do so.

applying the contract" a court may not vacate the arbitrator's judgment. 484 U.S. at 38, 108 S. Ct. at 371. The record before the Court presents no basis to bar enforcement of the arbitrator's award in this case.

The Court will therefore deny Honeywell's Motion for Summary Judgment, grant the Union's Motion for Summary Judgment, and order enforcement of the arbitration decision.

Although the Union clearly holds the stronger hand in this case, Honeywell's opposition to enforcement is clearly worthy of spirited legal debate. The Court cannot conclude that Honeywell's position lacks any reasonable legal basis. Therefore, the Union's request for attorney's fees will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Court

Date: June 13, 2011
Richmond, VA